# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

DARCY FORBES,
        Plaintiff,

vs.                                                                                    CA 14-322-ML

ASHBEL T. WALL, et al.,
        Defendants.

## MEMORANDUM AND ORDER

Plaintiff Darcy Forbes, *pro se*, an inmate at the Adult Correctional Institutions ("ACI"), has filed a Complaint (Doc. #1) pursuant to 42 U.S.C. § 1983 and related statutes, an Application to Proceed without Prepayment of Fees and Affidavit (Doc. #2) ("Application"), and a Motion for Appointment of Counsel (Doc. #3) ("Motion for Counsel"). The Court is required to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1916A.

## DISCUSSION

I.     Screening

        In connection with proceedings *in forma pauperis*, Section 1915(e)(2), 28 U.S.C., directs the Court to dismiss a case at any time if the Court determines that the action is, *inter alia*, frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). Similarly, Section 1915A, 28 U.S.C., directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and dismiss such claims for identical reasons. 28 U.S.C. § 1915A(b).

Chase v. Chafee, No. CA 11-586ML, 2011 WL 6826504, at *1 (D.R.I. Dec. 9, 2011). The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2) and 1915A is the same as the legal standard used for ruling on a 12(b)(6) motion. Id. at *2.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2013)("The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (internal quotation marks omitted."). However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted.). "In order to show an entitlement to relief, a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true ....'" Ocasio-Hernández, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 555).

"In making this determination, the Court must accept plaintiff's well-pleaded factual allegations as true and construe them in the light most favorable to plaintiff, although the Court need not credit bald assertions, unverifiable conclusions or irrational factual allegations." Chase, 2011 WL 6826504, at *2 (citing Iqbal, 556 U.S. at 678). Moreover, the Court must review pleadings of a *pro se* plaintiff liberally. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

II. Complaint

In his Complaint Plaintiff names as Defendants sixteen officials and officers at the ACI, including Ashbel T. Wall, Director of the Rhode Island Department of Corrections ("RIDOC"). Plaintiff raises four claims in his Complaint: 1) failure to protect; 2) negligent failure to protect; 3)

2

failure to classify him to protective custody; and 4) retaliation. As a result, Plaintiff alleges that he has suffered serious emotional injuries. He seeks a declaratory judgment as well as compensatory and punitive damages against each Defendant.

    A.    Failure to Protect

Plaintiff claims that the failure of Director Wall, Deputy Warden Leach, Lieutenants Macomber, Galligan, and Sayles, and Investigators Begones, Perry, and Figarido "to act on their knowledge of a substantial risk of serious harm to Plaintiff violated his Eighth amendment right to be free from Deliberate Indifference to his safety." Complaint § 44. The facts supporting Plaintiff's allegations, which the Court accepts as true, are as follows.

On January 17, 2014, Plaintiff was moved from the Intake Service Center to the High Security Center ("HSC"), A-Module, on B-Status. Id. ¶¶ 20-21. That same day, Plaintiff wrote a request slip to an unnamed "assigned 'Lieutenant'," about problems concerning his life and safety due to threats he was receiving from other inmates in A- and B-Modules. Id. ¶ 22. He asked to be placed in protective custody. Id. On January 18th, the very next day, Lieutenant Sayles ordered that Plaintiff be moved to D-Module, which Plaintiff describes as "a Mental Health block for Mentally Ill Inmates." Id. ¶ 23. He remained in D-Module from January 18, 2014 through March 25, 2014, on B-status. Id. ¶¶ 24-25. Plaintiff alleges that while there, he was treated like a "Disciplined Inmate." Id. ¶ 25. During the entire time he was housed in D-Module Plaintiff wrote multiple request slips concerning the same issues regarding his safety and again asking to be placed in protective custody. Id. ¶ 26. He told the Defendants named in this count that other inmates were making death threats against him, that he was going to be assaulted, and that threats were also made against his wife and children. Id. ¶ 27. Plaintiff alleges that he was told "we don't know what to

3

do with you," "you can't go nowhere," and "you'll be Okay in D-Module." Id. ¶ 28.

On February 25, 2014, Plaintiff filed a level One grievance about being housed in a mental health block and not being placed in protective custody. Id. ¶ 31. He alleges that Lieutenant Sayles refused to send Plaintiff a level II grievance form to file on the same issues mentioned above. Id. ¶ 32. On March 25, 2014, Plaintiff was moved to F-Module "by unknown Defendants" and placed on C-Status.[1] Id. ¶ 33. He does not state why this was done.[2]

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). As part of their duty to provide humane conditions, prison officials must "take reasonable measures to guarantee the safety of inmates," id. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)), including protecting prisoners from violence at the hands of other prisoners, id. at 833; see also Calderón-Ortiz v, Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002)("Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates."). Farmer held that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." 511 U.S. at 847; see also id. at 844-45. Thus, prison officials violate the constitutional conditions of confinement only if an inmate meets two requirements. Calderón-Ortiz, 300 F.3d at 64. First, the deprivation alleged must be "objectively, sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). In a failure to protect case, the plaintiff

---

[1] The status designation apparently refers to the privileges prisoners are allowed. See Complaint ¶ 33 (noting that after being moved to F-Module, which Plaintiff does not describe, he was "Placed on Admin. C-Status which is a downgrade from B-status.").

[2] Plaintiff makes no allegations regarding further threats to his safety while he was housed in F-Module.

4

must show that the conditions of incarceration pose a substantial risk of serious harm. Id. Second, the plaintiff must show that: (1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk. Id.

Not every injury suffered by a prisoner at the hands of another inmate gives rise to an Eighth Amendment claim, however. Giroux v. Somerset Cnty., 178 F.3d 28, 32 (1st Cir. 1999); see also Farmer, 511 S.Ct. at 845 ("prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment clause"); Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)("Any inquiry into the reasonableness of the prison officials' actions 'incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions.'") (quoting Farmer, 511 U.S. at 845). Here, accepting Plaintiff's allegations that he was at risk of serious harm and that Defendants knew of the threats to his safety, it cannot be said that they disregarded any risk thereto. As Plaintiff states, Lieutenant Sayles did, in fact, move Plaintiff out of A-Module to D-Module, the day after Plaintiff made his first request to be placed in protective custody because of his concerns for his safety. See Complaint ¶¶ 22-23. While it is clear from the Complaint that Plaintiff was not happy with the conditions in D-Module, see id. ¶ 25, he acknowledges that he was told that he would be "Okay in D-Module," id. ¶ 28.

The Court concludes that Plaintiff has not shown that Defendants were deliberately indifferent to the alleged risk(s) to Plaintiff's safety. Plaintiff's failure to protect claim is, therefore, DISMISSED.

B. Negligent Failure to Protect

Plaintiff alleges that Defendants Wall, Leach, Macomber, Galligan, Begones, Sayles, Perry, and Figarido owed Plaintiff a duty of reasonable care to protect him from assaults by other prisoners;

5

that they breached that duty by failing to provide protection when Plaintiff informed them of his fear of being assaulted and showed them documents supporting his fear; and that the breach of duty caused him serious emotional injury and damages. Id. ¶¶ 46-48. The only difference between this claim and the previous one is the legal theory under which it is brought: in the former, a federal constitutional violation (Eighth Amendment), and in the latter, negligence.

Regarding negligence claims brought pursuant to § 1983, the Supreme Court has stated:

> In Daniels [v. Williams, 474 U.S. 327 (1986)], we held that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.

Davidson v. Cannon, 74 U.S. 344, 347 (1986); see also id. (noting that petitioner claimed "only that respondents 'negligently failed to protect him from another inmate'"). As noted in Davidson, "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." 474 U.S. at 348 (citing Daniels); see also Williams v. City of Boston, 784 F.2d 430, 434 (1st Cir. 1986)("allegations of common law negligence, without more, do not state a claim for deprivation of liberty without due process of law"); Jones v. Rhode Island, 724 F.Supp. 25, 33 (D.R.I. 1989)("the acts or omissions of defendants must be alleged to have constituted more than ordinary negligence or lack of due care to state a §1983 claim"). Accordingly, Plaintiff's negligence claim fails to state a claim on which relief may be granted pursuant to § 1983 and is DISMISSED without prejudice to being brought in state court.

  C.  Failure to Classify to Protective Custody

Plaintiff claims that Lieutenant Doyle, Defendant Amaral, a counselor at HSC, Classification

6

Chairman Ward, and Defendant Bouchard[3] had knowledge of a substantial risk of serious harm to Plaintiff's life and failed to protect him by classifying him to protective custody in violation of the Due Process Clause of the Fourteenth Amendment. Complaint ¶ 50. Plaintiff states that as a result he suffered "serious emotional injuries." Id. ¶ 51.

The four Defendants named in this count comprised the classification board before which Plaintiff was brought in April, 2014, to be classified. Id. ¶¶ 34, 36. Plaintiff "explained his situation concerning his safety," id. ¶ 35, and recommended that he be placed in protective custody, id. He was told that he was not going to protective custody. Id. ¶ 36.

The Supreme Court has recognized that:

States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Connor, 515 U.S. 472, 483-84 (1995)(internal citations omitted).

Rhode Island has not created a liberty interest in the RIDOC's classification system. See Bishop v. State, 667 A.2d 275, 278 (R.I. 1995)("Rhode Island has not enacted any statute or regulation that gives rise to any statutory inmate liberty interest in its prison-inmate classification system."); see also DeCiantis v. R.I. Dep't of Corrs., 840 A.2d 1090, 1092 (R.I. 2003)(upholding Bishop); accord Carillo v. Moran, No. C.A. 77-0283L, 1993 WL 389383, at *2 (D.R.I. Aug. 11, 1993)(stating, in context of summary judgment recommendation on plaintiff's reclassification claim, that "Rhode Island has not created any liberty interest which has been violated ..."). Rather, the

---

[3] Plaintiff identifies her simply as "Mental Health at High Sec." Complaint § III.

Director of the RIDOC has "unfettered final discretion over the classification and housing of prison-inmates in [Rhode Island]." Bishop, 667 A.2d at 277.

Rhode Island General Laws § 42-56-31 provides that:

> It shall be the duty of the classification board to review all studies made of each prisoner during the period of his or her reception and from time to time thereafter as shall be necessary to further the purposes of this chapter; and to recommend to the director the security classification and rehabilitation program for the person. The director, or his or her designee, shall review the recommendation and, if her or she shall approve it, he or she shall cause the recommendation to be put into effect. In the event that he or she shall disapprove the recommendation, he or she shall request the board to make further study and review. In the event that the director, or his or her designee, shall disapprove further recommendation, the decision shall be final.

R.I. Gen. Laws § 42-56-31 (2006 Reenactment); see also §§ 42-56-30, 42-56-32. In other words, full discretion lies with the classification board and, ultimately, Director Wall. See Letourneau v. Wall, C.A. No. 12-848-M, 2013 WL 2181294, at *3 (D.R.I. May 20, 2013)("A protected state-created liberty interest within the meaning of the due process clause of the Fourteenth Amendment arises only when a state places substantive limits on official discretion, which require that a particular outcome be reached upon a finding that the relevant criteria have been met .... Rhode Island has not enacted any statute or regulation that gives rise to any statutory inmate liberty interest in its prison-inmate classification system.")(quoting Bishop, 667 A.2d at 278)(alteration in original)(internal quotation marks omitted).

Because Plaintiff has no liberty interest in his classification, he has no right which could be violated by not classifying him to protective custody. Accordingly, Plaintiff's failure to classify to protective custody claim fails to state a claim upon which relief may be granted and is DISMISSED.

D. Retaliation

Plaintiff's retaliation claim presents a different scenario. Plaintiff makes several allegations

alleging retaliation against him by prison officers:

(1) The refusal of Correctional Officers ("C/Os") Porter and Calise to file request slips to speak with the Special Investigations Unit ("SIU") and grievance(s) on other officers constituted retaliation for petitioning for redress of grievances and therefore violated the Eighth Amendment under cruel and unusual punishment, Complaint ¶ 52;

(2) The refusal of Lieutenant Sayles to provide Plaintiff with grievance slips to challenge prison regulations and, presumably, to file against prison staff[4] constituted retaliation for petitioning the government for redress of grievances and therefore violated the First Amendment, id. ¶ 53;

(3) The refusal of C/O Howard to allow Plaintiff to speak with a lieutenant and SIU constituted retaliation in violation of the Fourteenth Amendment under the Due Process clause, id. ¶ 54; and

(4) Plaintiff's transfer to segregation by C/O Duarte and Lieutenant Galligan for being under investigation for "writing them up"[5] constituted retaliation and violated the Eighth Amendment under cruel and unusual punishment, id. ¶55.

Because Plaintiff is proceeding *pro se*, the Court reads his Complaint generously. Estelle, 429 U.S. at 106. Having done so, the Court finds that Plaintiff has not yet pled "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 566 U.S. at 678. However, it is possible that he may be able to state a claim to relief that is "plausible on its face," id., if he provides the Court with more information supporting

---

[4] Plaintiff's exact phrasing is "to challenge prison regulations against prison staff[.]," Complaint ¶ 53.

[5] Plaintiff states that "No One has to[ld] Plaintiff why he is in segregation," but then alleges that C/Os Duarte and Calise told him that he was there "for writing Lt. Galligan up." Complaint ¶ 43.

his allegations of retaliation. Plaintiff, therefore, shall be allowed to file an amended complaint which contains sufficient factual content to state a claim that is facially plausible.[6]

  E. Conclusion re Complaint

To summarize, Plaintiff's failure to protect claim does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Accordingly, it is DISMISSED. Plaintiff's negligent failure to protect claim is not actionable under § 1983; therefore it is also DISMISSED.[7] Plaintiff's failure to classify to protective custody claim fails because Plaintiff has no liberty interest in his classification. It, too, is DISMISSED. Plaintiff's retaliation claim, however, is potentially viable provided he files additional factual content to supplement his allegations.

If Plaintiff wishes to press his retaliation claim, he may file an amended complaint containing only the retaliation claim. The Court will then screen the amended complaint and determine whether it contains sufficient factual matter to state a claim on which relief may be granted that is plausible on its face. Id.

Defendants not named in Plaintiff's retaliation claim should not be included in the amended complaint and are hereby DISMISSED from the action.[8]

---

[6] In the last paragraph of his retaliation claim, in addition to the Defendants mentioned above, Plaintiff lists Defendants Bouchard, Ward, Amaral, and Doyle. Complaint ¶ 56. Plaintiff makes no allegations of retaliation against these Defendants. Rather, they are listed as present at the classification board hearing, id. ¶ 36, and are named in Plaintiff's failure to classify to protective custody count, id. ¶¶ 50-51. In his amended complaint, Plaintiff should clarify what, if any, connection these Defendants have to his retaliation claim, and, if there is none, he should remove them from this count.

[7] As noted previously, the dismissal of Plaintiff's negligence claim is without prejudice.

[8] These Defendants are: Director Wall, Deputy Warden Leach, Lieutenant Macomber, Investigator Begones, Investigator Perry, and Investigator Figarido.

III. Application

As for Plaintiff's Application to proceed *in forma pauperis*, while Plaintiff has filed the affidavit required by 28 U.S.C. § 1915(a)(1), he has not submitted a certified copy of his trust fund account statement (or institutional equivalent), obtained from and certified by an appropriate official at the ACI, as directed by § 1915(a)(2).[9] If Plaintiff decides to proceed with his remaining claim and wishes to go forward with his Application to proceed *in forma pauperis*, he should provide the certified copy of his inmate account statement at the same time he files his amended complaint. The Court will then rule on his Application.

IV. Motion for Counsel

There is no right to appointed counsel in a civil case. Maroni v. Pemi-Baker Reg'l Sch. Dist., 346 F.3d 247, 257 (1st Cir. 2003); King v. Greenblatt, 149 F.3d 9, 14 (1st Cir. 1998)("This being a civil case, there is no constitutional right to counsel and the statutory authority is

---

[9] Section 1915(a) provides:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(a).

11

discretionary.")(internal citation omitted). Plaintiff must demonstrate that exceptional circumstances are present such that a denial of counsel is likely to result in fundamental unfairness impinging on his due process rights. In making the discretionary determination whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing on, among other things, the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. DesRosiers v. Moran, 949 F.2d 15, 24 (1st Cir. 1991); see also Cookish v. Cunningham, 787 F.2d 1, 2 (1986)("Whether exceptional circumstances exist requires an evaluation of the type and complexity of each case, and the abilities of the individual bringing it.").

In terms of the merits of the case, it is too early, at this initial stage, for the Court to reach a determination. As for the complexity of the legal issues, the case appears to be a straightforward prisoner civil rights action. Finally, with regard to Plaintiff's ability to represent himself, his allegations, as put forth in the Complaint, are detailed, clear, and comprehensible. Therefore, after considering the total situation, the Court concludes that this does not appear to be the "exceptional case" in which the appointment of counsel is warranted. Accordingly, the Motion to Appoint Counsel is DENIED.

## CONCLUSION

If Plaintiff so chooses, he may file an amended complaint containing only his retaliation claim. The Court will then re-screen the amended complaint. Plaintiff's failure to protect, negligent failure to protect, and failure to classify claims are DISMISSED. The dismissal of the negligent failure to protect claim is without prejudice to being brought in state court.

In addition, if Plaintiff decides to proceed with his retaliation claim and his Application to

proceed in forma pauperis, he may file a certified copy of his inmate account statement at the same time he files his amended complaint. The Court will then rule on his Application.

Plaintiff's Motion for Counsel is DENIED.


SO ORDERED:


/s/ Mary M. Lisi
Mary M. Lisi
United States District Judge

DATE: October 7, 2014